# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Timothy D. Lewis,

                      Plaintiff,      Case No. _____

v.                                    **COMPLAINT**
                                              **(JURY TRIAL DEMANDED)**

Union Pacific Railroad Co.,

                      Defendant.

      Plaintiff Timothy D. Lewis (hereinafter "Lewis") by and through his attorneys, brings this action for damages and other legal and equitable relief, stating the following as his claims against Defendant Union Pacific Railroad Co. (hereinafter "Defendant" or "Union Pacific").

## NATURE OF ACTION

      1.     This case arises under the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.*, as amended ("ADA").

## PARTIES

      2.     Lewis is an individual residing in the City of Rifle, Garfield County, Colorado. Lewis worked for Defendant in Colorado and was an "employee" of Defendant as defined by the ADA.

      3.     Defendant is a railroad carrier engaged in commerce in Colorado. Defendant's headquarters is in Omaha, Nebraska. Defendant was Lewis's employer as defined by the ADA.

      4.     Defendant employs approximately 42,000 persons and runs upwards of 8,000 trains on 30,000 miles of track all across the country west of Chicago and New Orleans.

      5.     Defendant employs approximately 900 people in Colorado.

## JURISDICTION AND VENUE

6. Lewis's claims arise under the ADA. This Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1331.

7. This Court has personal jurisdiction over the parties because Lewis resides in Colorado, Defendant conducts significant business in Colorado, and the case arises out of Lewis's employment with Defendant in Colorado.

8. Venue is proper in this district pursuant to 28 U.S.C. § 1391 because the Court has personal jurisdiction over Defendant, and because a substantial part of the events or omissions giving rise to Lewis's claims occurred in this district.

## FACTUAL ALLEGATIONS

9. In July 1977, Lewis began working for the Chicago & North Western Railroad, which would later merge with Union Pacific in 1995. Lewis worked for Chicago & North Western until approximately 1989.

10. After working outside of the railroad industry from 1989 to 2006, Lewis rejoined the industry and was hired by Union Pacific in February 2006. Union Pacific hired Lewis to work in its signal department as a signal maintainer.

11. In August or September of 2009, Lewis was injured while on the job for Union Pacific. He was pulling an old hose out from under a rail, but the other end of the hose was stuck under some concrete. The strain of pulling on the hose caused Lewis to suffer an inguinal hernia.

12. Lewis received treatment for his hernia and his pain subsided. He continued to perform his job until approximately December 2009.

13. Around December 2009, Lewis's hernia pain returned, so he went back to the doctor for further treatment. Lewis learned that scar tissue had formed in the affected area, causing nerve entrapment.

14. From approximately December 2009 through mid-2010, Lewis received treatment for the hernia and the nerve entrapment, seeking relief from the pain caused by those conditions. His doctors tried a variety of treatments, but none were successful. By mid- to late 2010, Lewis's doctors ran out of treatment options, and advised Lewis that he would likely have pain in his abdomen and groin for the rest of his life.

15. Having seemingly attained the maximal recovery, Lewis sought to get back to work for Union Pacific.

16. On or around August 2011, Lewis and Union Pacific reached a settlement of Lewis's injury claim related to his on-duty injury.

17. In or around August 2011, Lewis returned to work for Union Pacific as a signal supervisor. Lewis ably performed his work as a signal supervisor for Union Pacific from approximately August 2011 until approximately October 2016.

18. In the summer of 2016, Lewis learned that his job and the jobs of his fellow signal supervisors were going to be eliminated. Lewis began looking for other positions within Union Pacific that he could perform notwithstanding the ongoing nerve pain that he continued to suffer.

19. Lewis learned that Union Pacific's real estate department would be hiring many people for an upcoming initiative. Lewis spoke on the phone with a manager in the real estate department, who told Lewis he would be a good fit for a position in the department.

20. Indeed, Lewis had experience that made him an ideal candidate for one of the new positions in the real estate department: he had over twenty years of experience working for Union Pacific and its predecessor railroad; he had supervisory experience within Union Pacific; and, when he was not working for the railroad, he had owned his own construction company for years.

21. The real estate department manager that Lewis spoke with told him that Lewis could not apply for a real estate position while still in the signal department, but after the signal

department job was eliminated, the manager would be happy to have Lewis join the real estate department.

22. When Lewis's signal department position was eliminated at the end of October 2016, he spoke with Terry Owens in Union Pacific's disability management department. Lewis told Ms. Owens that he was interested in one of the jobs in the real estate department, that he was well-qualified for it, and that the manager he had spoken with in that department was interested in having Lewis join the team.

23. Ms. Owens informed Lewis that he was not eligible for the real estate job because Lewis's salary was paid through the wrong department. This explanation did not make sense to Lewis, and Ms. Owens gave no further explanation for why Lewis could not perform the real estate department job.

24. The ADA required Union Pacific to transfer Lewis into an open position for which he was qualified. Lewis was qualified for open positions in the real estate department. Nevertheless, Defendant refused to transfer Lewis into such positions.

25. Lewis had planned to continue working for Union Pacific for several more years. But since he was not allowed to perform the real estate department job, and no other job was offered to him, he was forced to retire.

26. On or about May 1, 2017, Lewis filed a Charge of Discrimination with the Equal Employment and Opportunity Commission ("EEOC"), alleging Defendant discriminated against him in violation of the ADA.

27. On or about August 20, 2018, the EEOC issued a Notice of Right to Sue. Having exhausted his administrative remedies, Lewis now brings the present action.

## **CAUSES OF ACTION**

### **COUNT I**

### **VIOLATIONS OF THE ADA**
### **DISABILITY DISCRIMINATION**

28. Section 12112(a) of the ADA prohibits employers from discriminating against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.

29. The ADA defines a disability as (A) a physical or mental impairment that impairs one or more major life activities; (B) a record of such impairment; or (C) being regarded as having such an impairment. 42 U.S.C. § 12102(1).

30. At all relevant times, Lewis was an individual with a disability under the ADA.

31. At all relevant times, Lewis had the requisite skill, experience, education and other job-related requirements for the position he held or desired, and could perform the essential functions of the position he held or desired, with or without accommodation. He was therefore a qualified individual under the ADA.

32. Defendant denied Lewis the real estate position on the basis of his disability, violating 42 U.S.C. § 12112.

33. Because Defendant violated 42 U.S.C. § 12112, Lewis has suffered and will continue to suffer loss of income, emotional distress, and other damages in an amount in excess of $75,000. Lewis is also entitled to attorneys' fees and costs incurred in connection with this claim.

34. Defendant committed the above-alleged acts with reckless or deliberate disregard for Lewis's rights. As a result, Lewis is entitled to punitive damages.

## COUNT II

### VIOLATIONS OF THE ADA
### FAILURE TO ACCOMMODATE

35. At all relevant times, Lewis was a qualified individual with a disability under the ADA.

36. Defendant knew about Lewis's disability.

37. Discriminating against a qualified individual with a disability includes:

> [N]ot making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity[.]

42 U.S.C. § 12112(b)(5)(A).

38. Defendant failed to make reasonable accommodation to Lewis's disability by denying him a transfer to the real estate position, in violation of the ADA.

39. Defendant also failed to engage with Lewis in the interactive process.

40. Because Defendant violated the ADA, Lewis has suffered and will continue to suffer loss of income, emotional distress, and other damages in an amount in excess of $75,000. Lewis is also entitled to attorneys' fees and costs incurred in connection with these claims.

41. Defendant committed the above-alleged acts with reckless or deliberate disregard for Lewis's rights. As a result, Lewis is entitled to punitive damages.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff Timothy D. Lewis prays for judgment against Defendant Union Pacific as follows:

1. That the practices of Defendant complained of herein be determined and adjudged to constitute violations of the ADA;

2. That Defendant and its directors, officers, owners, agents, successors, employees

and representatives, and any and all persons acting in concert with them, be enjoined from engaging in each of the unlawful practices, policies, customs, and usages set forth herein;

3. For an award of damages arising from loss of past and future income, emotional distress, and other compensatory damages, all in an amount in excess of $75,000;

4. For an award of pre-judgment interest pursuant to law;

5. For an award of Lewis's costs, disbursements and attorneys' fees pursuant to law;

6. For all relief available under the ADA;

7. For such other and further relief available by statute; and

8. For such other and further relief as the Court deems just and equitable.

**NICHOLS KASTER, PLLP**

Date: November 16, 2018

s/Charles A. Delbridge
David E. Schlesinger (MN #0387009)
    schlesinger@nka.com
Charles A. Delbridge (MN#0386639)
    cdelbridge@nka.com
80 South Eighth Street
4600 IDS Center
Minneapolis, Minnesota 55402-2242
Telephone: (612) 256-3200
Fax: (612) 338-4878

**ATTORNEYS FOR PLAINTIFF
TIMOTHY LEWIS**
1458 E. 12th Street
Rifle, CO 81650